IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JESUS HEREDIA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 04 C 7198 |
| | ) | |
| v. | ) | Maria Valdez, |
| | ) | Magistrate Judge |
| JO ANNE BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This is an action brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Jesus Heredia's ("Heredia") claim for disability and disability insurance benefits, requested under Title II of the Social Security Act. On January 14, 2005, the parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Before the Court are Heredia and Defendant, Jo Anne Barnhart's (the "Commissioner") cross-motions for summary judgment. For the reasons provided below, Heredia's motion is denied while the Commissioner's motion is granted.

### Background

Beginning on March 17, 2000, Heredia claims that he became disabled as defined under the Social Security Act as a result of a combination of headaches, lower back pain, blurry vision and a main complaint of dizziness. (R. at 32.) Over two years later, on August 12, 2002, Heredia applied for disability insurance benefits. (*Id.* at 52-54.) However, on December 16, 2002, the Social

-1-

Security Administration (the "Administration") denied Heredia's claim for Social Security disability benefits on the basis that Heredia was not "disabled" under the Administration's rules. (*Id.* at 29.) Thus, on April 21, 2003, Heredia filed a Request for Reconsideration, disagreeing with the claim determination because he contended he was "still sick" with continuing complaints of gastrointestinal issues combined with dizziness.[1] (*Id.* at 36.) Thereafter, Heredia requested a hearing before an Administrative Law Judge ("ALJ"), receiving one on January 26, 2004. In that hearing, the ALJ heard testimony from Heredia, Norma Heredia, his wife, and Stanley Hutton ("Hutton"), a vocational expert. (*Id.* at 208.)

At the hearing, Heredia testified that he was married and had three dependant children. (R. at 218.) He also testified that before coming to the United States from Mexico, his highest education level obtained was the equivalent of a junior high school education. (*Id.*) However, he added that he obtained a GED once in the United States. (*Id.*) When questioned about his ability to obtain a GED without speaking English, Heredia responded by noting that he attended English classes and added that he spoke "a little" English. (*Id.* at 219.) During the hearing, Heredia also testified about his work history, including his jobs as a quality control person for a plastic factory, a stock person at an auto parts store and a quality control person in a gift card manufacturing company.

Next, Stanley Hunton ("Hunton"), a vocational expert under contract with the Office of Hearing and Appeals, testified regarding the exertion and skill levels of Heredia's work history. (*Id.* at 225.) During the course of his brief testimony, Hunton testified that Heredia's work in plastic

---

[1] In Heredia's Request for Reconsideration, the Social Security Administration noted that his request was not timely filed. (R. at 36.) However, the Administration granted Heredia's request because of good cause as he was in Mexico during the appeal period. (*Id.* at 38.) The Administration also noted that language problems also resulted in a good cause finding as Heredia requested Spanish notices but received his denial letter in English. (*Id.*)

production and at the auto parts store was unskilled and of "medium" exertion. (*Id.*) Hunton also testified that Heredia's job in card manufacturing was also unskilled and involved "light" exertion. (*Id.*)

Lastly, Heredia's wife, Norma, testified on his behalf. She noted her husband's esophageal problems and acid reflux issues, adding that Heredia could not eat regular or greasy foods "because everything hurts him." (*Id.* at 229.) When asked by the ALJ as to what Heredia does at home, she testified that Heredia helps her clean, vacuum and dust, sometimes helping to empty the dishwasher. (*Id.* at 230-31.) Moreover, she testified that Heredia drives an automobile on occasion, often to take the couple's children to school. (*Id.* at 232.) While Heredia also traveled with her to the grocery store with her, she pointed out that he often remained in the car due to feelings of dizziness. (*Id.* at 233.) When asked if there were times when Heredia did not suffer from dizziness, she responded: "He's never not dizzy." After asking Norma this last question, the ALJ asked Heredia if he "understood much of what [he] said to her," Heredia responded simply: "Yes." (*Id.* at 233.)

On May 28, 2004, the ALJ issued his decision, finding that although Heredia has a severe impairment, *i.e.*, dizziness, he was not entitled to disability or disability insurance benefits under the Social Security Act because he generally retained the ability and residual functional capacity to perform the work he had performed in the past. (R. at 14-21.) Thus, after evaluating the evidence presented, the ALJ concluded that Heredia was not disabled as defined by the Social Security Act. (*Id.*) Thereafter, on July 22, 2004, Heredia requested a review of the ALJ's decision which was denied on September 3, 2004. *See* R. at 4-7. On November 11, 2004, Heredia filed a complaint with the U.S. District Court for the Northern District of Illinois, contending that the ALJ's decision that Heredia was not disabled was "not supported by substantial evidence" and applied "an erroneous

standard of law." (Compl. ¶ 5.) On March 10, 2005 and March 11, 2005, Heredia and the Commissioner respectively filed their cross-motions for summary judgment.

## Legal Standard

The Court reviews the ALJ's "decision to deny benefits to determine whether it was supported by substantial evidence or is the result of an error of law. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (citing *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir.2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir.2000)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). *See also Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir.2000). Where an ALJ's findings are supported by substantial evidence, this Court must affirm his or her factual findings, but where the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Brindisi v. Barnhart*, 315 F.3d 783, 785 (7th Cir. 2003) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). Moreover, in reviewing the ALJ's decision, the Court "will not 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] own judgment for that of the Commissioner.'" *Rice*, 384 F.3d at 369 (quoting *Lopez*, 336 F.3d at 539). Finally, "while the ALJ must have built a 'logical bridge from the evidence to his conclusion[, the Court] will nonetheless 'give the opinion a commonsensical reading rather than nitpicking at it.'" *Rice*, 384 F.3d at 369 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir.2002); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir.2000)) (internal citations omitted).

## Analysis

According to the Social Security Act, a claimant is disabled if he has the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In determining whether a claimant is disabled, an ALJ considers the following five questions in order:

1. Is the claimant presently employed?
2. Does the claimant have a severe impairment?
3. Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. § 416.920(a)-(f). If the ALJ reaches an affirmative answer at either Step 3 or Step 5, a claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). But, if the ALJ reaches a negative finding at any step other than Step 3, he or she is precluded from a finding of disability. *Id.* Thereafter, once the claimant shows that he or she is unable to perform past work, the burden shifts to the Commissioner to show the ability to engage in other work existing in significant numbers in the national economy. With this framework in mind, the Court turns to analyze the ALJ's credibility determination.

As noted, Heredia challenges the decision of the ALJ issued on May 28, 2004. Specifically, Heredia asks this Court to determine "[w]hether the ALJ erred in finding claimant's testimony not fully credible which developed into a finding that claimant's RFC [residual functional capacity] is medium (moving machinery precluded)." (Pl.'s Mem. Supp. Summ. J. at 1.) In seeking a reversal, Heredia challenges only one of nine delineated findings made by the ALJ. Specifically, Heredia

attacks Finding No. 5, in which the ALJ found that "the claimant's allegations regarding his limitations [were] not totally credible for the reasons set forth in the body of the decision." (*Id.* at 8.) As set forth in the body of the decision:

> The undersigned [ALJ] also notes that when he (claimant) filed his application, the claimant indicated that he did not speak English, and understood very little English; he requested that a Spanish language interpreter be present at the hearing. However, during the hearing, it became apparent to the undersigned that the claimant understood, and he acknowledged that he understood most of what was said in English. Accordingly, the undersigned finds that this misrepresentation of facts also seriously erodes his credibility.

(*Id.* at 9 (quoting R. at 19).) Heredia argues that "[w]here the record contained strong evidence of the claimant's inability to communicate in English, the ALJ erred in determining that the claimant was able to communicate (understand) in English based on a 'brief exchange' with the claimant during the hearing." (*Id.* at 10 (citing *Lugo v. Chater*, 932 F. Supp. 497, 502 (S.D.N.Y. 1995).)[2] Thus, Heredia argues that the ALJ's credibility determination was "patently wrong."

"In evaluating the credibility of statements supporting a Social Security application, [the Seventh Circuit has] noted that an ALJ must comply with the requirements of Social Security Ruling 96-7p." *Brindisi*, 315 F.3d at 787. In pertinent part, Social Security Ruling 96-7p provides:

---

[2] In *Lugo v. Chater*, 932 F. Supp. 497 (S.D.N.Y. 1996), a district court in New York found that the ALJ failed to create a clear record for review where the ALJ's failed to provide an explanation for his assessment of the claimant's ability to communicate in English. *Id.* at 502. Moreover, the reviewing court noted that the record indicated that the claimant was "neither literate nor even minimally conversant in English." *Id.* However, *Lugo* is factually distinguishable from the present case because Heredia's own benefits application, if true, establishes that he possesses more than a minimal grasp of English as he could read English. *See* R. at 65. Further, the issue of whether Lugo spoke English determined which process the ALJ and the vocational expert utilized for the proper review of Lugo's benefits application. *Lugo*, 932 F. Supp. at 502. Thus, by finding Lugo spoke English, the ALJ would have applied the wrong rule for review. *Id.* at 501-02. In this case, however, Heredia's ability to speak English did not affect the determination of the proper rule to be applied for reviewing Heredia's application. Rather, Heredia's English-speaking ability appears to have solely affected his credibility in the eyes of the ALJ.

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. *The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.* This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

SSR 96-7p, 1996 WL 374186, *4 (S.S.A. July 2, 1996) (emphasis added). The ALJ is required to state which of the plaintiff's complaints he rejected and why such complaints are not supported by the record. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

"Typically, the ALJ's credibility determination is granted substantial deference by a reviewing court." *Cichon v. Barnhart*, 222 F. Supp. 2d 1019, 1026 (N.D. Ill. 2002) (citing *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000)). "In particular, when a credibility determination is based on subjective evidence, such as observations of the claimant in the courtroom, the ALJ's opinion will be affirmed on appeal unless the claimant can demonstrate that he or she was 'patently wrong.'" *Id.* (citing *Herr v. Sullivan*, 912 F.2d 178, 182 (7th Cir. 1990)). But, where objective evidence influences an ALJ's disability determination, the ALJ's assessment of the evidence will be more closely scrutinized. *Id.* (citing *Anderson v. City of Bessamer City, N.C.*, 470 U.S. 564, 575 (1985)). In this case, the ALJ reached his determination, in part, by relying on subjective evidence, *i.e.*, observing Heredia and his ability to understand or comprehend English while participating in the

January 26, 2004 administrative hearing.[3] As a result, the Court will examine whether the ALJ's judgment was "patently wrong." *See id.*

As noted above, it is the *claimant's* responsibility to show that the ALJ's decision was patently wrong. *See Herr*, 912 F.2d at 182. Yet, in reviewing Heredia's motion, the Court notes that Heredia's arguments consist of little more than boilerplate recitations of case law generally applicable in a Social Security appeal. With the one exception found where Heredia quotes one passage of the ALJ's decision, Heredia's argument section of his brief is remarkably silent on facts to support their argument. *See* Pl.'s Mem. Supp. Summ. J. at 8-10. Along similar lines, while Heredia argues that "the record contained strong evidence" of an inability to communicate English, the Court notes that he fails to point to any specific evidence in the record such as to assist this Court in making its decision. (*Id.*)

The ALJ determined that Heredia was "not totally credible" based on his perception of Heredia's ability to speak and understand English at the administrative hearing, in apparent contradiction to his assertion that he understood very little English during the application process. As noted in the ALJ's decision, when the ALJ "became aware of the fact that the claimant understood most of what was said in English" and asked claimant about that observation, "the claimant agreed that he had understood all that the [ALJ] said," with the ALJ pointing out further that "the interpreter was used for more complex questions." (R. at 18.) This dialogue is reflected in the transcript when the ALJ asked Norma Heredia if her husband was "never not dizzy," and she

---

[3]The Court qualifies this sentence with the language "in part" because the ALJ's finding that Heredia understood English was only one of nine findings made by the ALJ. *See* R. at 20-21.

responded affirmatively. (*Id.* at 233.) Immediately thereafter, the ALJ asked Heredia if he "understood much of what [he] said to her," Heredia responded simply: "Yes." (*Id.*)

First, in evaluating the sufficiency of the basis for the credibility determination, the Court notes that the transcript does not reflect whether any, most or all of the testimony transcribed was in fact translated from English to Spanish during the course of the hearing. The Court does note that the transcript reflects the presence of a Spanish language translator at the hearing. *See* R. at 210 (noting that Shanti Kumari Johnson was present at the January 26, 2004 hearing and sworn in as an interpreter).

Second, the issue the ALJ raised on credibility – whether Heredia was being truthful about his limited English proficiency – is collateral to the central issue of whether Heredia is truthful in his testimony about his physical abilities. *See* 20 C.F.R. §§ 416.912(a)(3); 416. 929(c)(3) (concerning the evaluation of claimant's statements of pain and impairment). What we have here is the ALJ's *observations* that Heredia appeared to understand English well enough, in contrast to what the ALJ believed was Heredia's assertion that he did not understand English well. It should be noted, that at the application stage on one document (in English), in asking whether he could speak English, Heredia checked a box indicating "NO," signifying that he spoke Spanish. (R. at 65.) He also indicated that he "understand little english." (*Id.*) Yet, on the same document, when asked if he could read English, Heredia checked the box marked "YES," and also checked a box which indicated that he could write more than his name in English. (*Id.*)

The ALJ's conclusion that Heredia was untruthful about his English language ability is based on the ALJ's observation that Heredia's "statement's concerning his impairments and their impact on his ability to work are not entirely credible in light of discrepancies between the claimant's

assertions and information contained in the documentary reports..." (R. at 19.) The ALJ also noted that Heredia's apparent contradictory statements concerning his English proficiency was a "misrepresentation of facts" that "seriously erodes his credibility." (*Id.*)

As stated by the Seventh Circuit in *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) "[a]lthough an ALJ's credibility determination is usually entitled to deference, 'when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor, courts] have greater freedom to review the ALJ's decision." (internal citation omitted). The objective factors before the ALJ concerning Heredia's English proficiency were that Heredia stated in an English language version of an application that he did not speak English well, but understood written English. And, Heredia told the ALJ during one colloquy that he understood the testimony his wife had given in court (presumable the testimony had not been translated into Spanish). The subjective factor includes the ALJ's observation that Heredia appeared to understand the English language testimony (apparently without assistance of a translator, although this point is not well documented by the ALJ). These factors formed the basis of the ALJ's conclusion that Heredia engaged in a "misrepresentation of the facts" that seriously eroded Heredia's credibility. (R. at 19.)

The information available to the ALJ would indicate that Heredia understood some English but also needed a court interpreter for more "complex" discussions. The only information Heredia supplied to the ALJ pre-hearing indicated that he did not speak English well, gave his initial interview in Spanish and requested an interpreter for the hearing. Speaking English well is certainly subjective. It is possible for a native Spanish speaker to be able to understand English, speak conversational English, but yet not believe that they speak English well. And, given that the issue

concerns a matter of legal importance, the request for an interpreter is not unreasonable especially given the fact that the ALJ indicated that Heredia did need the interpreter for some "complex" translations. *See* R. at 18 (noting "[t]he interpreter was used for more complex questions"). The factors relied upon by the ALJ would not lead this Court, if reviewing de novo, to necessarily imply that Heredia was lying.

Although this Court would not reach the same determination as the ALJ on the credibility issue, this does not mean that the ALJ's decision was "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). The Court points out that the ALJ met the expectations of Social Security Rule 96-7p in issuing his decision. According to the Rule, "[i]n instances in which the adjudicator has observed the individual, the adjudicator is not free to accept or reject the individual's complaints solely on the basis of such personal observations, but should consider any observations in *the overall evaluation of the credibility* of the individual's statements." SSR 96-7p, 1996 WL 374186 at *8 (emphasis added). Further, in determining credibility, the ALJ's "finding must be grounded in the evidence and articulated in the determination or decision," cannot rely on conclusory statements to justify a decision, and must set forth "reasons for the finding on credibility, supported by the evidence in the case record," with sufficient specificity "to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186 at *4. Here, in reviewing the ALJ's decision, the ALJ did not rely on conclusory statements to justify his credibility decision. Rather, the ALJ explained that his finding that Heredia was "not fully credible" was tempered in part by Heredia's acknowledgment that he understood most of what was said in English, when Heredia had previously represented that he understood little English. *See* R. at 19; 65. This dialogue is reflected in the

transcript when the ALJ asked Norma Heredia if her husband was "never not dizzy," and she responded affirmatively. (*Id.* at 233.) Immediately thereafter, the ALJ asked Heredia if he "understood much of what [he] said to her," Heredia responded simply: "Yes." (*Id.*) Hence, the Court is unwilling to conclude that the ALJ's credibility determination was patently wrong based on a review of the record. As a result, the ALJ satisfied the requirements of Social Security Ruling 96-7p, particularly where the rule allows him to use personal observations in reaching a credibility decision.

Further, it is apparent that the ALJ did not entirely reject Heredia's testimony. The ALJ gave credence to Heredia's main complaint of dizziness and found that Heredia "has a severe impairment" as a result of that dizziness. (R. at 16.) Although ultimately finding that the dizziness did not result in a disability, the ALJ found that Heredia's testimony concerning the effect of the dizziness to be in contradiction to the other evidence. The objective medical evidence did not support Heredia's testimony. For some of the symptoms presented, *e.g.*, headaches, blurry eyes, and a lack of concentration, the ALJ noted that there was "no objective medical evidence in the record that provides a basis to support the claimant's symptoms." (R. at 16.) Instead, following a physical, neurological and mental examination, the ALJ noted that Dr. Karri, a consulting physician, found that the examination was unremarkable for objective irregularities concerning those complaints. *See* R. at 16; *see also id.* at 160-63. In addition, Heredia stated that he had problems with pain, fatigue, weakness, dizziness, concentration, and memory but, in contradiction to these complaints, testified that he needs no help in standing, walking, or balancing and performs yard work and drives a motor vehicle at times. (R. at 17.)

Additionally, the Court does not find that the ALJ's credibility determination was patently wrong because the present case is distinguishable from those cases in which an ALJ's credibility determination *was* found "patently wrong." For example, in *Hoffman v. Barnhart*, No. 02 C 8187, 2005 WL 66049, at *1 (N.D. Ill. Jan. 12, 2005), a claimant sought review of the decision to deny her application for disability insurance benefits and supplemental social security income. The claimant asserted that she was disabled as a result of a number of ailments, placing a particular emphasis placed on pain caused by migraine headaches. The ALJ found that her complaints of debilitating pain were not credible and were controlled with medication. *Id.* at 11. However, in reviewing the ALJ's credibility determination, the district court noted that the "ALJ did not cite to any specific record evidence for her conclusion that [the claimant's] headaches [were] 'adequately dealt with by her medications.'" *Id.* After reviewing the medical records from her treating physicians, the court noted that the claimant "continued to complain of headaches and related symptoms notwithstanding the pain medication." *Id.* Hence, the court found that the ALJ's "assessment of [the claimant's] credibility as it relate[ed] to her migraines" was "patently wrong." *Id.* at 18. No such flaws exist in this case.

## Conclusion

Because the Court does not find that the ALJ's decision on the issue of credibility was "patently wrong," the Court upholds the ALJ's finding that Heredia was not disabled as defined by the Social Security Act since his dizziness did not prevent him from performing his past relevant work which was medium in exertion levels and unskilled. Accordingly, the Court denies Heredia's motion for summary judgment [doc. # 13] and grants the Commissioner's cross-motion for summary judgment [doc. # 17].

**SO ORDERED**

DATE: **JUN 1 9 2006**

HON. MARIA VALDEZ
United States Magistrate Judge